## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TERRILLE D. ELLIS,**

      **Petitioner,**

                                **Case No. 2:17-cv-415**

      **v.**                                **CHIEF JUDGE SARGUS**

                                        **Magistrate Judge King**

**WARDEN, ROSS**
**CORRECTIONAL INSTITUTION,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (Doc. 3), Respondent's *Return of Writ* (Doc. 20), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals adopted the prosecution's summary of the facts of the case, as follows:

> Early morning of November 20th, 2013, co-defendant by the name of Melanie Spears recruited Mr. Ellis and Mr. Derrick Robinson to commit a robbery of Shaun Fullen, S–H–A–U–N, Fullen, F–U–L–L–E–N. Throughout the day they planned this robbery. And in the evening, Melanie Spears was over at the home of Shaun Fullen here in Franklin County and had Mr. Ellis and Mr. Robinson enter the home under the guise that they were robbing Ms. Spears.
>
> During the course of this, they had a confrontation in the bathroom with Shaun Fullen.
>
> Terrille Ellis did fire one shot striking and killing Mr. Fullen. After they shot him, they ransacked the house, took cash and a number of firearms and fled the location. Mr. Fullen died as a proximate result of Mr. Ellis shooting him.

*State v. Ellis*, No. 14AP-912, 2015 WL 5011707, at *1, 2 (Ohio App. 10th Dist. Aug. 25, 2015).

> Defendant-appellant, Terrille D. Ellis, appeals from the judgment of the Franklin County Court of Common Pleas sentencing him to a term of imprisonment of 23 years to life following his guilty plea to a charge of aggravated murder with a firearm specification. Ellis was indicted on charges of aggravated murder plus a firearm specification, aggravated burglary with a firearm specification, aggravated robbery with a firearm specification, and two counts of having a weapon while under a disability. After initially pleading not guilty to all charges, Ellis entered a plea of guilty to one count of aggravated murder with a firearm specification. At issue in this case is whether the trial court determined that Ellis understood the rights he was waiving by pleading guilty.
>
> Ellis has assigned one error for this court's review:
>
> The trial court erred in accepting Appellant's guilty plea in violation of Criminal Rule 11 and due process guarantees under the state and federal Constitutions.

*Id.* at *1. On August 25, 2015, the appellate court affirmed the judgment of the trial court. *Id.*

On February 10, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

*State v. Ellis*, 144 Ohio St.3d 1478 (2016).

Meanwhile, on September 15, 2015, Petitioner filed a motion to withdraw his guilty plea.

(Doc. 5-1, PageID# 147).[1] The trial court denied that motion, *id.* (PageID# 153), and apparently

Petitioner did not file an appeal from that decision. On September 22, 2015, Petitioner filed a

second motion to withdraw his guilty plea, asserting that his guilty plea was not knowing,

intelligent or voluntary because he was denied the effective assistance of counsel. *Id.* (PageID#

155-59). It does not appear that the trial court ruled on that motion. On June 9, 2017, Petitioner

filed a third motion to withdraw his guilty plea, asserting that he had entered his guilty plea

based on defense counsel's erroneous advice that Petitioner would be eligible for early release

after serving 13 years. *Id.* (PageID# 164-68). On June 16, 2017, Petitioner filed a fourth motion

_____

[1] The photocopy of the motion, as included in the record before this Court, is not decipherable.

to withdraw his guilty plea, again alleging that his attorney had materially misrepresented the amount of prison time that Petitioner would have to serve, and that his guilty plea was therefore not knowing, intelligent, and voluntary. *Id.* (PageID# 173-78). On June 27, 2017, the trial court denied that fourth motion. *Id.* (PageID# 181). On October 4, 2017, the appellate court *sua sponte* dismissed Petitioner's appeal from that denial, holding that Petitioner had failed to file a brief within the time required by Ohio App.R. 18(C) and had failed to respond to a notification from the appellate court that the time for filing the brief had expired. *Journal Entry of Dismissal,* (ECF No. 20-1, PageID# 302). On October 30, 2017, the appellate court ordered that Petitioner's motion for reconsideration be stricken from the file. *Journal Entry* (ECF No. 20-1, PageID# 315). On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. *Entry* (ECF No. 20-1, PageID# 326).

Petitioner filed the *Petition* on May 12, 2017. He asserts that the trial court erred in accepting his guilty plea and thereby violated Ohio Criminal Rule 11 and notions of due process (claim one); and that his guilty plea was not knowing, intelligent, or voluntary based on the ineffective assistance of counsel, because his attorney misinformed him that he would be eligible for early release after 13 years (claim two).

**Claim One**

In claim one, Petitioner alleges that the trial court violated due process and Ohio's Criminal Rule 11 when it accepted his guilty plea. Respondent contends that this claim should be dismissed because Petitioner failed to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires that a petitioner specify the nature of his grounds for relief and state the facts in support of each ground. Habeas Rule 2(c) also authorizes the dismissal of a claim if the habeas court cannot determine from the petitioner's

pleadings the exact errors of fact or law that the petitioner presents for adjudication. *See Rice v. Warden*, No. 1:14-cv-732, 2015 WL 5299421, at \*4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) is appropriate where the pleadings contain unintelligible and conclusory allegations and statements) (citations omitted). *Accord v. Warden, Lebanon Corr. Inst.,* No. 2:12-cv-355, 2013 WL 228027, at \*3 (S.D. Ohio Jan. 22, 2013) (although a federal court must liberally construe a *pro se* prisoner's pleadings, it is not required to "conjure allegations" on the petitioner's behalf) (citations omitted).

Liberally construing Petitioner's *pro se* pleadings, as this Court is required to do, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (the allegations of a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers), the Court is not persuaded that Petitioner's first claim should be dismissed for failure to comply with Rule 2. To the contrary, it appears that Petitioner raises the same issue in this claim that he did in the Ohio Court of Appeals, where he also alleged that the trial court failed to comply with Rule 11, and that his guilty plea was not knowing, intelligent, or voluntary.

Of course, to the extent that Petitioner raises a claim regarding the alleged violation of state law, this claim does not provide a basis for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of

evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). It is only where the error resulted in the denial of fundamental fairness that habeas relief will be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

That said, Petitioner argued in the state appellate court that his guilty plea was unconstitutional. *See Brief of Appellant Terrille Ellis* (ECF No. 5-1, PageID# 66-76). The state appellate court rejected that claim in relevant part as follows:

> {¶ 7} At the plea hearing, the prosecutor presented the court with a two-page "Entry of Guilty Plea" form that had been signed by all parties as well as a three-page "Defendant's Agreement" executed by Ellis, his attorney, and the assistant prosecuting attorney. The prosecutor explained the plea agreement and the joint recommendation on the sentence, and the trial court engaged in the following colloquy with Ellis:
>
> THE COURT: Okay. Mr. Ellis, I have a plea form here that says you're changing your plea to guilty to one count of aggravated murder with a three-year firearm specification and that the other two counts are being dismissed.
>
> Are you voluntarily pleading guilty to aggravated murder with a firearm spec?
>
> DEFENDANT ELLIS: Yes.
>
> THE COURT: Are you aware when you enter a guilty plea, you allow me to find you guilty of that offense and proceed with the sentencing?
>
> DEFENDANT ELLIS: Yes.
>
> THE COURT: On aggravated murder, it would be possible to get all the way up to life without parole in addition to the three-year firearm spec and a fine up to $25,000, are you aware of that?
>
> DEFENDANT ELLIS: Yes.
>
> THE COURT: When you enter a guilty plea, you give up your right to have a jury trial on these charges. You have a right to

require the State to prove beyond a reasonable doubt that you're guilty of these offenses. You have a right to confront and cross-examine anyone who testifies against you. You'd have a right to issue subpoenas for any defense witnesses you might have. You'd have a right, if you went to trial, to remain silent throughout the proceedings, and then you could appeal if any court rulings or jury verdicts went against you in a trial. By entering this guilty plea, that means you're giving up those trial rights.

Are you doing that voluntarily?

DEFENDANT ELLIS: Yes.

THE COURT: I also understand from what Mr. Manning just said that you entered into a Defendant's Agreement and—or an agreement with the prosecutor about testifying.

Are you aware that, if you don't cooperate and carry out that agreement, that they could withdraw this plea and start all over again?

DEFENDANT ELLIS: Yes.

(Tr. 3–5.)

{¶ 8} The prosecution then presented the following statement of facts:

Early morning of November 20th, 2013, co-defendant by the name of Melanie Spears recruited Mr. Ellis and Mr. Derrick Robinson to commit a robbery of Shaun Fullen, S–H–A–U–N, Fullen, F–U–L–L–E–N. Throughout the day they planned this robbery. And in the evening, Melanie Spears was over at the home of Shaun Fullen here in Franklin County and had Mr. Ellis and Mr. Robinson enter the home under the guise that they were robbing Ms. Spears.

During the course of this, they had a confrontation in the bathroom with Shaun Fullen. Terrille Ellis did fire one shot striking and killing Mr. Fullen. After they shot him, they ransacked the house, took cash and a number of firearms and fled the location. Mr. Fullen died as a proximate result of Mr. Ellis shooting him.

Again, this occurred here in Franklin County, Judge.

(Tr. 5.) The trial court accepted Ellis' plea and found him guilty of aggravated murder with a firearm specification.

{¶ 9} Ellis contends that even though the trial court properly informed him of his constitutional rights, it failed to determine if he actually understood the constitutional rights he was waiving by pleading guilty. Ellis argues that the trial court was required to specifically ask him if he understood the rights he was giving up. Ellis contends that a strict compliance standard is required in determining whether he understood the rights he was waiving, and that by not inquiring specifically if Ellis understood the rights he was waiving, the court failed to meet the strict compliance standard, and the plea should be vacated.

{¶ 10} The Supreme Court of Ohio has stated, "[w]e have also clarified that in reviewing the totality of the circumstances, a court must determine whether the defendant understood the consequences of waiver." *Veney*, ¶16. Thus, whether the defendant understands the consequences of his waiver is to be reviewed under a substantial compliance standard, not strict compliance. *Id*. Under the substantial compliance standard, a reviewing court examines the totality of the circumstances surrounding the plea to decide if the trial court determined that the defendant understood the rights he was waiving by pleading guilty.

{¶ 11} *Veney* then stands for the proposition that there is a distinction between the strict compliance required for the notification of constitutional rights and the substantial compliance necessary for other information required to be in the plea colloquy. Id. at ¶ 14 ("Although we had initially insisted on strict compliance with Crim.R. 11(C), we began to draw a distinction between the notification of constitutional rights and the other information required to be in the colloquy in *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163.").

{¶ 12} We believe that this reasoning applies to the requirement in Crim.R. 11(C)(2)(c) that the court is to determine that the defendant understands that by the plea he or she is waiving all of the aforementioned rights. Thus, the court is not required to use the exact language contained in the rule and ask the defendant whether he understands the consequences of his waiver, although the better practice is "to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty." *Ballard* at 479.

{¶ 13} In *State v. Barker*, 129 Ohio St.3d 472, 2011–Ohio–4130, the Supreme Court of Ohio held that a court reviewing the validity

of a plea could consider the language in the change-of-plea agreement, stating that "when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it." *Id*. at ¶ 24. Additionally, the Supreme Court held that "*Veney* did not reject the *Ballard* approach of considering the totality of the circumstances, but instead is limited to the situation where a trial court omits any discussion of a constitutional right in the oral colloquy." *Id*. at ¶ 25.

{¶ 14} Here, an examination of the totality of the circumstances surrounding the plea, including additional record evidence, demonstrates that Ellis knowingly and voluntarily understood that by pleading guilty he was waiving his constitutional rights. The key portion of the colloquy shows the trial court itemizing all the rights he gives up by entering a guilty plea. Then the trial court reiterates:

[THE COURT:] By entering this guilty plea, that means you're giving up those trial rights.

Are you doing that voluntarily?

DEFENDANT ELLIS: Yes.

(Tr. 4.)

{¶ 15} In addition, on October 1, 2014, Ellis signed a two-page "Entry of Guilty Plea" which stated in pertinent part:

I further understand that by pleading "Guilty", I waive a number of important and substantial constitutional, statutory and procedural rights, which include, but are not limited to, the right to have a trial by jury, the right to confront witnesses against me, to have compulsory subpoena process for obtaining witnesses in my favor, to require the State to prove my guilt beyond a reasonable doubt on each crime herein charged at a trial at which I cannot be compelled to testify against myself, and to appeal the verdict and rulings of the trial Court made before or during trial, should those rulings or the verdict be against my interests.

{¶ 16} The plea form is also signed by Ellis' counsel affirming that counsel had explained the facts and law of the case to him and that counsel believed that the plea was being entered into knowingly, intelligently, and voluntarily. *Id*.

{¶ 17} Thus, despite the trial court's failure to explicitly ask Ellis if he understood that, by pleading guilty, he was waiving each of the enumerated constitutional rights, the record demonstrates that Ellis was fully and meaningfully informed of the rights he was waving and that his plea was entered into voluntarily. Based on the totality of the circumstances and the record before us, we conclude that Ellis knowingly and voluntarily waived his constitutional rights. For this reason, we overrule the sole assignment of error.

*State v. Ellis*, 2015 WL 5011707, at *2-4.[2]

---

[2]There was a dissenting opinion:

DORRIAN, J., dissenting.

{¶ 19} I respectfully dissent from the judgment of the majority.

{¶ 20} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." (Emphasis added.) *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). The majority, at ¶ 17, concludes that Ellis "knowingly and voluntarily" waived his constitutional rights. However, whether a defendant understood the rights he was waiving and, therefore, "intelligently" waived those rights is a different question. I do not believe that the trial court in this case determined whether Ellis intelligently waived his rights.

{¶ 21} "[T]he basis of Crim.R. 11 is to assure that the defendant is informed, and thus enable the judge to determine that the defendant understands that his plea waives his constitutional right to a trial." (Emphasis added.) *State v. Ballard*, 66 Ohio St.2d 473, 480 (1981). The Supreme Court of Ohio has stated that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading it guilty." (Emphasis added.) *Id*. at 479. The Supreme Court has further stated, however, that "failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *Id*. at 479–80.

{¶ 22} I disagree with the majority's application of the substantial compliance standard to conclude that the trial court complied with its duty to determine that Ellis understood the constitutional rights he was waiving. Majority decision at ¶ 10. The majority bases this application of substantial compliance on its reading of ¶ 16 of *State v. Veney*, 120 Ohio St.3d 176, 2008–Ohio–5200. That portion of the *Veney* decision refers to the totality of the circumstances in the context of the substantial compliance standard as it applies to non-constitutional rights outlined in Crim.R. 11(C)(2)(a) and (b). *See id*. at ¶ 14–17. Furthermore, *State v. Griggs*, 103 Ohio St.3d 85, 2004–Ohio–4415, the case upon which *Veney* relied in applying the totality of the circumstances standard to the duty to "determine whether the defendant understood the consequences of waiver," applied the standard when considering whether the defendant understood the right to be informed that a guilty plea is a complete admission of guilt. *Id*. at ¶ 16. The Supreme Court in Griggs noted specifically that such right is "nonconstitutional and therefore is subject to review under a standard of substantial compliance." *Id*. at ¶ 12. The rights in question in the case before us are constitutional as outlined in Crim.R. 11(C)(2)(c).

{¶ 23} I am concerned that the effect of the majority decision is to require strict compliance with a trial court's first duty under Crim.R. 11(C)(2)(c) (i.e., informing the defendant of his constitutional

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

---

rights), but mere substantial compliance for the second duty under that rule (i.e., determining that the defendant understands he is waiving those constitutional rights by pleading guilty). I believe this is an incorrect interpretation of the rule and existing precedent. *See Veney* at syllabus ("A trial court must strictly comply with Crim.R. 11(C)(2)(c).").

{¶ 24} Nevertheless, even in applying a totality of the circumstances standard in a strict compliance context on the facts of this case, I would not conclude that the trial court strictly complied with its duty to determine whether Ellis understood the rights he was waiving. None of the trial court's questions addressed whether Ellis understood the rights he was waiving by pleading guilty. After informing Ellis of his constitutional rights and explaining that he was waiving those rights by pleading guilty, the trial court asked a single question, inquiring whether Ellis waived those rights voluntarily, but not whether he understood them. Moreover, even with respect to the nonconstitutional rights under Crim.R. 11(C)(2)(a) and (b), the trial court merely asked whether Ellis was aware he was waiving them, not whether he understood them. These questions go to the knowing and voluntary nature of the plea, but not to whether it was made intelligently. Although the majority refers to the guilty plea form signed by Ellis and his counsel, the trial court did not ask Ellis during the colloquy whether he understood the guilty plea form or whether he had discussed it with counsel. *Compare State v. Barker*, 129 Ohio St.3d 472, 2011–Ohio–4130, ¶ 21; *State v. Horton*, 10th Dist. No. 09AP–245, 2009–Ohio–5117, ¶ 10 ("When asked if he understood everything in the plea documents that he signed, appellant indicated that he did.").

{¶ 25} For the reasons stated above, based on the facts presented in this case, I would conclude that the trial court failed to strictly comply with its duty under Crim.R. 11(C)(2)(c) to determine that Ellis understood the constitutional rights he was waiving by pleading guilty. Therefore, I would find that Ellis's guilty plea was invalid. *See State v. Payne*, 10th Dist. No. 05AP–1305, 2006–Ohio–4624, ¶ 8.

*State v. Ellis*, 2015 WL 5011707, at *4-6.

The AEDPA limits a federal court's authority to issue a writ of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme]

> Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

**Application**

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'*Boykin* does not require a separate enumeration of each right waived and separate waivers as to each.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975)). It is not necessary that the defendant consciously waive each potential defense relinquished by a plea of guilty. *United States v. Broce*, 488 U.S. 563 (1989). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks,* 852 F.2d at 885 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a federal habeas court must look at the totality of circumstances surrounding the plea. *Id.* A defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

As discussed by the state appellate court, the record reflects that Petitioner signed an *Entry of Guilty Plea* document indicating that his attorney had explained Petitioner's constitutional and statutory rights, and that Petitioner had reviewed the facts of and the law governing the case with his counsel. (ECF No. 5-1, PageID# 56). The signed *Entry of Guilty Plea* form further indicates:

> I understand that my guilty plea(s) to the crime(s) specified constitute(s) an admission of guilt and a waiver of any and all constitutional, statutory, or factual defenses with respect to such crime(s) and this case. I further understand that by pleading "Guilty", I waive a number of important and substantial constitutional, statutory and procedural rights, which include, but are not limited to, the right to have a trial by jury, the right to confront witnesses against me, to have compulsory subpoena process for obtaining witnesses in my favor, to require the State to prove my guilt beyond a reasonable doubt on each crime herein charged at a trial at which I cannot be compelled to testify against myself, and to appeal the verdict and rulings of the trial Court made before or during trial should those rulings or the verdict be against my interests.

*Id.* Petitioner acknowledged in that document that he understood that he faced a maximum sentence of life without parole in addition to a three year firearm specification and a $25,000 fine. *Id.* He understood that the parties had agreed to the joint recommendation of a sentence of 23 years to life. *Id.* No one had threatened him, promised him leniency, or in any other way coerced or induced his guilty plea. He was satisfied with the representation of his attorney, and he understood his right to appeal. *Id.* (PageID# 57). At his guilty plea hearing, Petitioner indicated that he was voluntarily pleading guilty to aggravated murder with a firearm specification. He understood that he faced a sentence of life without parole in addition to the three year firearm specification and a fine of up to $25,000. *Transcript* (ECF No. 5-2, PageID#

217-18).   The trial court advised Petitioner of the rights that Petitioner was waiving by entry of his guilty plea.   *Id.* (PageID# 218).   Through counsel, Petitioner agreed with the prosecutor's statement of the facts.   *Id.* (PageID# 220).   Petitioner asked no questions.   The trial court proceeded immediately to sentencing, and Petitioner's only statement was to express his remorse.   *Id*. (PageID# 226).

In view of the foregoing record, and considering the totality of the circumstances, including Petitioner's signed *Entry of Guilty Plea* form, this Court is not persuaded that Petitioner has established that the state appellate court unreasonably applied federal law, or based its decision on an unreasonable determination of the facts in light of the evidence presented so as to warrant federal habeas corpus relief.

Claim one is without merit.

**Claim Two**

In claim two, Petitioner asserts that his guilty plea was not knowing, intelligent, or voluntary because his attorney told him that he would be eligible for early release after thirteen years.   Petitioner first presented this allegation to the state courts in his June 9, 2017, third motion to withdraw his guilty plea.   (ECF No. 5-1, PageID# 170).   Petitioner again raised this issue in his June 16, 2017, fourth motion to withdraw his guilty plea.   *Id*. (PageID# 177-78).   The trial court denied the motion to withdraw the guilty plea as "totally without merit" and "barred by res judicata."   *Entry* (ECF No. 5-1, PageID# 181).   On October 4, 2011, the appellate court dismissed Petitioner's appeal for failure to file a brief within the time required by Rule 18(C) of the Ohio Rules of Appellate Procedure and for failing to respond to that court's notification that the time for filing an appellate brief had expired.   *Journal Entry of Dismissal* (ECF No. 20-1,

PageID# 302).  Respondent argues that Petitioner has thereby committed a procedural default of this claim.

### Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This obligation "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way

15

that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id*. at 452 (quoting *Murray*, 477 U.S. at 479). Before counsel's ineffectiveness can constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if the claim of ineffective assistance of counsel is itself procedurally defaulted, a petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, the court must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96).

> Failure to comply with written procedural rules detailing the timing and filing of appellate documents has been adjudged a bar to federal habeas review when the rules of appellate procedure breached are well-established and regularly followed, *i.e.*, adequate and independent State procedural rules. *See Nethers v. Sheldon*, 2010 WL 4513816 (S.D.Ohio 2010) (finding that a petitioner's failure to file a timely memorandum in support of his motion for delayed appeal and the State court's subsequent dismissal of the motion for failure to prosecute constitutes an independent and adequate State ground to bar review of federal habeas grounds for relief); *see also Shroyer v. Moore*, 2007 U.S. Dist. LEXIS 63811, 2007 WL 2492312 (S.D.Ohio Aug. 29, 2007), ("In so ruling, the

> court clearly and expressly relied on both an independent and
> adequate State ground stemming from petitioner's noncompliance
> with the court's well established and regularly-followed written
> procedural rules governing the timing and filing of the requisite
> appeal documents."); *see also James v. Warden*, 2007 WL
> 2326867, *4 (S.D.Ohio 2007) ("Dismissals for failure to comply
> with a court order and for want of prosecution involve a 'firmly
> established and regularly followed' practice utilized by all courts,
> not only the courts of Ohio.").

*Whitt v. Warden, Lebanon Correctional Inst.*, No. 2:12-cv-731, 2014 WL 3889074, at *13 (S.D.

Ohio June 26, 2014) (quoting *Marshall v. Brunsman*, No. 1:09–cv–0259, 2010 WL 5627669, at

*8 (N.D.Ohio Dec. 3, 2010); *see also Stojetz v. Ishee*, 389 F.Supp.2d 858, 885-86 (S.D. Ohio

2005) (enforcing procedural default based on the petitioner's failure to comply with Rule 18(C)

of the Ohio Rules of Appellate Procedure); *Hall v. Clipper*, No. 1:10-cv-1340, 2011 WL

4808179, at *14 (N.D. Ohio Sept. 7, 2011) ("Ohio App. R. 18 advances Ohio's interest in the

regularity of criminal convictions and does not implicate federal law.") (citing *Normand v.*

*McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000)).

This Court concludes that Petitioner procedurally defaulted his claim two by failing to

comply with state procedural rules requiring the timely filing of an appellate brief. Petitioner

may still secure this Court's review of the merits of his claims if he demonstrates cause for his

failure to follow the state procedural rules, as well as actual prejudice from the constitutional

violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to

overcome a procedural default." *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001) (citing

*Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro*

*se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases for

excusing a procedural default. *Bonilla,* 370 F.3d 498. Instead, in order to establish cause, a

petitioner "must present a substantial reason that is external to himself and cannot be fairly

attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

Petitioner claims that he timely mailed his brief on September 24, 2017, when he deposited it with prison officials for mailing, and that it must have been lost or destroyed. *Motion for Rehearing* (ECF No. 20-1, PageID# 313-14). The docket of the Franklin County Clerk of Court indicates that the appellate court granted Petitioner's request for an extension of time – until September 29, 2017 – in which to file the appellate brief. On October 4, 2017, the Court of Appeals *sua sponte* dismissed the appeal for failure to file the brief. (ECF No. 20-1, PageID# 302.) Petitioner's appellate brief was actually filed on October 10, 2017. *Id.* (PageID# 303.) On October 23, 2017, Petitioner filed a *Motion for Rehearing*, in which he claimed that he had submitted his appellate brief to prison officials for mailing on September 24, 2017, and that he did not know why it had not been timely received. *Id* (PageID# 313). However, Petitioner did not indicate, in the certificate of service attached to his appellate brief, the date on which he had submitted it to prison officials for mailing. *See id* (PageID# 312). The state appellate court denied Petitioner's motion, striking it from the file as "out of rule." *Journal Entry* (ECF No. 20-1, PageID# 315).

The failure of prison officials to timely deliver documents submitted by a prisoner for mailing prior to the filing deadline may constitute cause for a procedural default. *See Foster v. Warden*, 575 F. App'x 650, 654 (6th Cir. 2014) (citing *Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013)).

> Once a prisoner gives his state court filing to prison officials to be mailed, it is in their control and he no longer has the ability to affect its delivery. *Id.* If the filing would have been timely filed "'in the normal course of events'" but is filed late or never reaches the court, the prisoner has demonstrated cause to excuse the procedural default. *Id.* (quoting *Maples*, 340 F.3d at 439); *see also Ivy*, 173 F.3d

at 1141 ("[I]t [is] incumbent upon the State to ensure that [the prisoner's] motion was promptly put into the regular stream of outgoing mail.").

*Id*. However, nothing in the record supports Petitioner's claim that he timely submitted his documents to prison officials for mailing. It is the petitioner's burden to establish cause and prejudice sufficient to overcome a procedural default. *Hinkle* 271 F.3d at 245. Under these circumstances, and in view of the lack of any evidence indicating that the prison mail room did not act promptly in mailing Petitioner's materials, the Court is not persuaded that Petitioner has established cause for his procedural default. *See Love v. Warden*, No. 2:16-cv-19, 2017 WL 2728597, at *3 (S.D. Ohio June 26, 2017) (citations omitted); *Nethers v. Sheldon*, No. 2:09-cv-324, 2010 WL 4513816, at *6-7 (S.D. Ohio Oct. 28, 2010).

The United States Supreme Court has also held that a claim of actual innocence may be sufficient "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id*. at 317. However, a claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins,* 506 U.S. 390, 404 (1993)).

The actual innocence exception to a procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – *i.e.*, evidence not previously presented at trial – would allow no reasonable juror to find him guilty beyond a

reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the

Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here.

After an independent review of the record, the Court does not deem this to be so extraordinary a

case as to relieve petitioner of his procedural default of his claim two.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*    
Norah McCann King
United States Magistrate Judge
May 11, 2018
